Thank you everybody. Good morning. Nice to see you all. We'll call the cases in the order in which they are calendared. 10-17030 Cano v. Taylor. Each side will have 15 minutes. Good morning. Good morning. Kelly Chebianski on behalf of Appellant Eddie Cano. Is it Cano? Cano. Okay. Correct. I'd like to reserve two minutes for rebuttal, please. Your Honors, there are several issues that have been raised by the briefs, but in light of the time that is available, I just want to make a few points about the three rulings that Cano is appealing and otherwise rest on the briefing. The first ruling is the dismissal of counts 2 and 3 from the first amended complaint for failure to exhaust administrative remedies. The district court dismissed these newly added claims from the first amended complaint because they were not exhausted before the initial complaint was filed. That seems to have been consistent, isn't it, with ACBAR? Well, I think it's inconsistent with Rhodes. I do think that the ACBAR case did, purporting to rely on Rhodes, stated the rule differently, but the ACBAR court distinguished Rhodes. And, I mean, the Rhodes, the claims arose after the lawsuit was filed. Correct. But in Rhodes. So, but let me stick with this. ACBAR, the claims arose prior to the filing, which is like our case here. Correct. But why should the judge not follow, why shouldn't we follow ACBAR? Okay. For several reasons. First, Rhodes was issued first. Rhodes specifically addressed and held that the filing date of the original complaint is irrelevant once an amended complaint was filed. Its analysis of the fact that it was a supplemental pleading was an alternative basis for its holding. It didn't rely on that because the plaintiff in that case had, in fact, captioned the complaint as a supplemental pleading. In addition, following OCTAR and finding that OCTAR somehow revised or amended Rhodes would create a circuit split with the Seventh Circuit. The Seventh Circuit has repeatedly held that the same rule applies for amended complaints, both in the Seventh Circuit case that Rhodes followed, Barnes v. Briley, and in the Cannon v. Washington case. And this court does have a policy of avoiding circuit splits without a good reason. Also, it would be Well, does OCTAR prevent us from going where you want us to go? I don't believe so, Your Honor, because this court would be following express language and holding in Rhodes. And Rhodes is the earlier case, and the OCTAR court did not have the ability to overrule or revise or amend Rhodes in any respect. So I think this I'm sorry? Or did it distinguish it? I think, well, I think OCTAR is, I think both OCTAR and Rhodes, I think OCTAR did not necessarily distinguish it. Yes. OCTAR is also distinguishable from this case because the newly added claim was exhausted before, there were two separate claims that the court addressed. And the one that it really addressed was exhausted before the initial complaint was filed. So it didn't actually address the original complaint. It addressed the specific situation that is at issue here. But as I understand it, and I'm just trying to make sure I have the facts, these claims occurred before the filing of the complaint, but they weren't exhausted at the time of the filing of the complaint. Correct. Nor could they have been exhausted. Well, nor could they have been, I don't know. And the second thing, I guess, is Rhodes really wasn't about this type of case. This was a little bit different than Rhodes in that these were claims occurring before the complaint and Rhodes was about claims occurring after the complaint had been filed. It is factually distinguishable. Isn't that true? It is factually distinguishable, correct. All right. I'm just trying to make sure that I get this down. So then in that particular case, we would have to, we would have to extend, it seems, Rhodes to go where you want us to go and OCTAR really doesn't say we should go there. Well, the rule set forth in Rhodes, Your Honor, was not dependent upon the fact that the claims did not arise until after the initial complaint was filed. It stated the rules based on the general rule of pleading and the fact that the PLRA did not do anything to amend the general rules of pleading. And it is a general rule of pleading that once an amended complaint is filed, the original, the date of the initial filing is irrelevant. The Rhodes court also reached its conclusion. Well, I didn't, I don't see all that in Rhodes. What I saw in Rhodes was these are new claims. They arose after the complaint and they've now been exhausted. So it's just fine to amend your complaint and add them. And what I see here is not a new claim, an old claim, not exhausted at the time of the filing of the old complaint. And now you want to add them because they've been exhausted. Correct. Your Honor, at page 1,000. Let me ask you another question. Did you really exhaust these claims? Yes. If I could please address the first question. At page 1,006 in the Rhodes opinion, the court said, we agree with the Seventh Circuit, quote, that the filing of the amended complaint was the functional equivalent of filing a new complaint and it was only at that time that it became necessary to have exhausted the administrative remedies. Also, it is, the purpose of the PLRA is to limit the quantity of inmate suits. So saying that claims that are newly exhausted have to be brought in a separate lawsuit would not further the purpose of the PLRA. Let me ask you this. It's really a jurisdictional question in terms of the court because if failure to exhaust subjects a plaintiff to a motion to dismiss because they haven't exhausted and then the court doesn't have jurisdiction. But the court still would not have to, it could have jurisdiction, but it still would not have to grant the motion to amend the complaint. Isn't that correct? It's still discretionary. I'm sorry. I don't understand. Well, no. I mean, in terms of, like, when you want to file an amended complaint, you don't get to do that as a matter of right necessarily, correct? I mean, the court would still have to go along with it. But what you're, the thing is, if you have to exhaust before, you know, if what you're asking, then they wouldn't be able to file a motion to dismiss. They wouldn't be able to say the court has no jurisdiction for failure to exhaust. But a district court could still say, we're not going to file a motion to dismiss. We're not going to let you file this first amended complaint because you could have done that a long time ago, and you don't get to do that as a matter of right, right? Well, failure to exhaust is an affirmative defense. It's an affirmative defense, and so the court doesn't have jurisdiction. I'm sorry. I'm not understanding. If it's an affirmative – If you haven't exhausted, if you try to file it and you haven't exhausted, then the court dismisses it because they can't hear it. I respectfully, I don't think that's correct. It's an affirmative defense. So if the defendants had never raised it, the exhaustion would never become an issue. It's an affirmative defense on which the defendants bear the burden of proof, and the OCTAR court did specifically address that and say defendants are required to show – Isn't that a jurisdictional issue? No, I don't believe so, Your Honor. I mean, the defendants have to prove – If they haven't exhausted, then you're out, right? Well, it must be dismissed if the defendants prove that it wasn't exhausted before, I think, before the newly added claims are tendered to the district court for filing. If you're wrong, let's just assume for the sake of discussion, the district judge was correct, Judge Silver got it right. The worst that happens is your guy just files a new complaint, right? I think that is correct. What's the real big deal about this? Why didn't you just file a new complaint? Well, I think for a couple reasons. In this particular instance, he is an indigent person who cannot afford the separate filing fees associated with bringing a bunch of different lawsuits. And it certainly doesn't promote judicial economy to require a bunch of different suits involving the same parties against the same defendants where one would suffice. And that is one of the purposes, as the Jones case, the United States Supreme Court held that – But another policy of the law is to encourage exhausting first and then filing, not the other way around. Okay. And that is certainly true. But when certain claims are exhausted, I think the policy issue that you create by holding to that rule is if there are statute of limitations or any other reasons why one claim needs to be filed and the other claims have not been fully exhausted, you're saying that they have to wait and exhaust absolutely everything before they can file a complaint or bear the additional expense of maintaining separate lawsuits, which is just not an efficient way to proceed. IFP status? I'm sorry? Did he get informal proper status? He did, yes, but only because he had alleged a serious risk of harm. Well, for whatever reason, he didn't have to pay for the filing fee. For the Eighth Amendment claim, he would have to pay for it as to the other claims because there was not a serious risk of harm. I wonder if we could shift gears for a second and talk about the merits. District judge said that it's really uncontested that he got a lot of attention for his medical – mental issues. That is correct. He definitely was seen a lot of times. I think the first issue is on his – I don't think I've seen anyone that's been seen this many times before. Well, the fact that he has had access to medical staff, of course, does not mean that he was competently treated. And that is certainly well established. It's not like he was during a malpractice suit. You've got to show deliberate indifference. Yes, I understand that. If this guy was treated more than anyone I've ever seen. But in the context of deliberate indifference claims in the Calabrese, I think, case, the mere fact that he was seen by someone does not mean that he was treated with reasonableness or without deliberate indifference. What evidence did he produce that he should have been treated differently than the way he was? Well, I think the first issue is that there was a denial. He repeatedly requested the assistance of counsel. He was not able – I'm not asking if you have a lawyer. I'm asking what evidence did he come up with to show that he was treated improperly? I understand, Your Honor, and I was – the record is very limited.  I just want to make sure I have it. He had no evidence to show that he was not treated correctly. Is that true? For whatever reason, that's the record we have. The allegations in the first amended complaint, which I do acknowledge were not repeated in summary judgment, I think that is one of the issues that he had. But he did have allegations in there where some of the defendants told him, I don't care what your problems are, I'm not going to help you. They said there were – another one said to him, we don't have enough money. The director doesn't want to spend money on medical care. And if you look at the actual records, there is a spot in each of the records regarding the treatment for the duration of time that they spent with him. Most of them are blank. The ones that are filled in show that he was seen for five or ten minutes at a time. And granted, I don't know a lot about proper mental health treatment, but I don't see how he can really be assessed or his needs assessed when they're speaking with him for five minutes. It seemed that they either put him in suicide watch or gave him some medication, but did not really spend time. And Defendant Taylor admitted in the discovery responses that she didn't – did not have access to any of his medical history. That was another one of the things that Kano alleged, is that there was no effort to look at his prior history to see what issues he was having to make sure that they properly diagnosed him. And Taylor admitted in her discovery responses that she didn't look at any of his files and she just assessed him based on the few minutes that she spent with him. And so those are the allegations. If I could change again. I'm wondering, since he's out of prison, why this case is not mooted. I understand that the equitable claims would probably be mooted, and I understand that you're going to argue the legal claims are not mooted. But I guess I looked at his complaint and I'm trying to figure out where the actual damages are alleged. Well, we cited in the brief several cases holding that if there's a live claim for nominal damages. Where did there be any nominal damage alleged in the complaint? Under Rule 54C of the Federal Rules of Civil Procedure, he doesn't have to request nominal damages in the complaint to be entitled to receive them, and we also cited case law for that proposition. Well, I understand the case law. I guess I'm trying to figure out where is the allegation you think best states his allegation for nominal damage. He did request compensatory damages. He did request damages. That was in the prayer. What did he do in his complaint that alleged anything for nominal damage? What's your best allegation in that complaint? Well, he's alleged the denial of his constitutional rights. That's enough for a nominal? It is. It is. Your Honor, can I? What's your best case on that? Gosh, I'll have to tell my. I think there's a U.S. Supreme Court case holding that the, I think it was the, I'm sorry, I'm trying to get that. Well, I'll be fair with you. I'll be fair with you. I read what you suggested in your brief, and I couldn't find anything in the complaint that would get me to this nominal damage theory. Okay. There was, it was the U.S. I understand your position. Your position is he doesn't have to request nominal damages. He just simply has to allege a constitutional violation, and have proven he's then entitled to at least nominal damages if he can't prove. Correct. I see you're down to about a minute. I do. I'd like to reserve the remainder of my time for rebuttal, please. Okay. Thank you. Good morning. Good morning. May it please the Court, my name is Claudia Acosta-Collings, and I represent the individual state defendants. We ask the Court affirm the judgment below, because the defendants provided Kano constitutionally adequate mental health care. They successfully averted his alleged suicide risk, so much so, that he walked out of prison very much alive. I can address the. . . Well, I think the more interesting issue is the failure to exhaust, as far as that goes. And in terms of that, obviously, where, you know, Mr. Kano certainly, I mean, I sort of made a count of 63 times by a psychologist, Taylor, in a 16-month period, 36 times by Mertens between 2007 and 2008, by three psychiatrists and ten psychologists or psychology associates, a total of approximately 106 times. It sort of goes on and on. But on the failure to exhaust, that why wouldn't it, you know, why wouldn't it just make more sense for judicial economy, for people like Mr. Kano, if he's exhausted it before he files his first amended complaint? I mean, the court doesn't have to grant the first amended complaint, but why wouldn't it make more sense just to take care of all of it right there instead of a separate lawsuit and go through the whole thing, then we'd be back the whole time again on something else? Right. Part of the considerations of an appeal RA was to avoid frivolous lawsuits and to curb the filing of inmate lawsuits because of the congestion of the courts. So how would you further that by letting him file another one and then it would be two lawsuits instead of one where the judge could have handled them all in one? Right. Well, here Kano was a litigious inmate. He had over 40 lawsuits filed in district court. He had three strikes against him. So in essence, what Kano did and what I think the opening brief basically concedes is that he put his initial complaint in as a placeholder under the imminent danger, under the IFP status rules, so that he could complete exhaustion for counts two and three and then add those in after the fact. And I think that goes against McKinney and Vaden. That would provide an end-runaround exhaustion. Let me ask you another question about that. It's my understanding that the state even suggests that he really didn't exhaust. Correct. You're suggesting that he didn't comply with the internal deadlines. Is that what you're suggesting? Yes. Do we know what deadlines were missed? The evidence that was supported with the motion to dismiss showed that he didn't complete the exhaustion at the director's level. I know in his response, Kano provided different inmate letters and grievances showing that he kept submitting following the next steps when he had received no responses. But the evidence that we had was at the director's level was that they didn't get the inmate grievance appeals at the director's level, and therefore there was no response. Well, is this then, is this case really ready for us to look at it? If we don't really know whether he did what he needed to do on exhaustion and the district court didn't rule about that? Right. The district court decided that nevertheless. Well, the district court went a different way. Right. And said even if he exhausted, he doesn't get it. Because of the timeliness. Because. Now, but if we come back to the idea that he did exhaust, or we come back to the idea he can file an amended complaint, rather than having to file a new complaint, as long as he exhausts before he files the amended complaint, then we're back to the same old thing, aren't we? Whether he exhausted at all? Yes. We're back to that same story. And we were filing in good faith that that had not been completed to the director's level. If we don't, if we don't, if this case does not stand for the premise that if you've exhausted by the time you file the first amended complaint on that, would we be creating a split in the circuits, as appellant's counsel has noted? If we go your way, is that a split in the circuits? Well, I think going our way, in Rhodes, they relied on Barnes, the Seventh Circuit case. That case was decided two weeks after Cannon, the other case that opposing counsel refers to. Just two weeks. Well, it could be a yes or a no.  But it would be a split in the circuit. The Seventh Circuit, the two different cases, Cannon and Briley, have two different outcomes on two different facts. So I think Rhodes follows Briley, but not Cannon. Still not a yes or a no. Yes. It would be a split. Yes. Let me go on a different idea. I was interested with this moot idea. I don't really think you've got any argument as it relates to the injunctive or declaratory relief. I guess what I'm really worried about is the legal relief. Do you think the case is moot as to that? Yes, we do. Why? I mean, I asked her about actual damages that were not alleged. I asked her about allegations of nominal damage. And she suggests the Supreme Court case constrains me wholly in my application of what to do about nominal damages. What do you have to say about that? Well, they concede that the injunctive and declaratory relief are moot. They do. So we're talking about damages. And under the PLRA, if you don't have a prior physical injury or showing a prior physical injury, any claims based on emotional or mental distress are barred. What about the nominal damage? We believe we have a different reading on Oliver that the opposing side does. And Oliver says that so long as the claims are not based on mental and emotional distress, those claims can proceed. So that includes nominal and punitive damages. That was a 14th Amendment case, but it explains what the prior physical injury requirement entailed. How many times was this fellow seen by mental health professionals in the prison? Countless times, Your Honor. He's got a serious mental problem, I gather. That's his argument. Well, you're providing numerous mental treatments for him. Right. But part of the picture that's portrayed here is he wasn't happy where he was placed. He used alleging or threatening to commit suicide as a diversion. He used that to stave off his boredom. He didn't like where he was at. He wanted a TV. He wanted a radio. He had disciplinary problems, which put him in SMU, maximum custody. And the defendants in this case did not have the... Was he prescribed psychotropic medications? Yes, he was. And he apparently, on his request, his medication would be changed. He just has a conclusory allegation that the medications didn't work for him and the other ones... That he didn't give him the medicines for no reason, I assume. There's evidence that he would refuse his medications, and there was even some... You're saying this guy doesn't have a mental problem? He does. He does have mental illness, but whether or not he's seriously mentally ill is a different question. And I think Taylor... Why shouldn't he have gotten appointed counsel, as he has here? As he has here. Below, it was up to the court's discretion to decide whether or not he met or he had exceptional circumstances. So he's a guy who you say is taking psychotropic medications, has been seen numerous times by mental health professionals. He's claiming they're driving him crazy, putting him in the solitary, and it's causing him to decompensate. Why isn't a guy like this entitled to counsel at the trial level? Well, he's also a person who's very litigious, has very many 40-plus cases in the district court. He could have... He did articulate his claims, that's the position of the defendants of the court, and the record shows that. He had filed numerous objections, motions, responses. He made discovery requests. So he's mentally ill but not legally incompetent. Yes. Is that the test? No, that's not the test. Okay, so what is the test? He's going to articulate his claims? Correct, and he's going to... there's likelihood of him succeeding on the merits. I'm trying to figure out how a guy like this is going to prove that he's not getting treated properly. I mean, they come up with a whole bunch of experts to say he's being seen all this time, he's being appropriately treated. How would somebody in his position who's, you say, got a mental illness, he's taking psychotropic medication, how would somebody like that litigate a case like that? I think there's different scenarios what a guy... What's this scenario? In this scenario, he could have written to the prison law office or the other nonprofit groups that represent prisoners. He could... Did he do that? Did he do that? Yeah. I don't think so, not in this case. Do you know whether he did or didn't? I do not know. Okay. What else could he have done that you know that he did or didn't do? He could have asked family for support. He could have asked family to help hire an attorney. He could have written... Do you know whether he did that? I do not know that. Okay. But in this case also, he may have... Okay, so I'm sitting in the position of Judge Silver back in Phoenix trying to figure out, he says I'm basically, I'm nuts, they're treating me improperly, they're giving me all kinds of psychotropic medication. How does somebody like that litigate this without a lawyer who's indigent, who's got informal pauperous status granted to him? He... He can't really. Well, he can't really. Sometimes I think inmates try to get their treating doctors to write affidavits for them or to talk to them about what their diagnoses are. His treating doctors are the defendants in the case? Right, but I don't think they were all exclusively his treating physicians. The guys he's suing are going to... I've seen that before where an inmate will... I haven't seen that before. Well, not asking the defendants to write affidavits for them or declarations, but asking a different treating physician in the ADC to help him out. They'll include them on a witness statement. They'll even draft declarations for them. So he could have... His hands weren't tied just because he's alleging he needs an attorney. Well, you think he's a malingerer too. Yes, we do. There is evidence that he had mood disorders. Well, he's certainly a pain in everyone's side here on the institutional side. Is that correct? Do you want me to answer that? Well, I think he clearly... I think that clearly seems to be the case here. So the question is, your parade of horribles is that you have a lot of people in prison that if they were to be entitled to counsel, you have a lot... People in prison for the most part probably aren't enjoying good mental health. So there's a lot of people that are manipulative and not enjoying good mental health in prison. And so your parade of horribles is if they all get a lawyer, that would be terrible. Well, who would pay for it is another concern for the courts. And finding attorneys to take pro se cases or take inmate cases would probably be another hurdle for the courts. They always call Snow and Woomer. So, yeah, just because he's lost doesn't prove that he needed assistance of counsel. He made an argument. He just didn't make it well enough to pass the hurdle for the two-part test for assistance of counsel. Okay. Let's see if there's any other questions. Anything else? We ask that you affirm the judgment. Thank you. Thanks. You get the last word. You've got about a minute left. To respond to your question, Judge Smith, about authority to support the availability of nominal damages, the U.S. Supreme Court case was Carey v. Pipus that addressed a due process violation. In the Bernhardt case cited in the briefs, the court found that nominal damages might be available for an interference with an implied federal right, and it cites several cases from the Ninth Circuit holding that in a 1983 action, nominal damages may be available if actual damages can't be proved. On the issue about how would Cano prove that he was not receiving adequate care, defendants argued that expert testimony is required, although counsel noted that there are several different options that he could pursue. She did not provide any way that he could receive expert testimony in his case. On the issue that he was faking or malingering, I mean, that was one of the allegations that he said. The reason that they were indifferent is because they treated him as faking. And I see I'm just about out of time. If I could just make one more. Okay. Oh, okay. I'm sorry. Thank you. The case just argued is good. We want to thank you and your firm very much for taking this pro bono case.
judges: Silverman, Callahan, Smith